CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 11 2007

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KERMIT A. WILLIAMS, <br> Plaintiff, | Civil Action No. 7:07-cv-00319 |
| v. | MEMORANDUM OPINION |
| GARY BASS, et. al., <br> Defendant(s). | By: Hon. James C. Turk <br> Senior United States District Judge |

Plaintiff Kermit A. Williams, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. In his complaint, Williams alleges that the defendant prison officials have violated, and continue to violate, his constitutional rights by failing to transfer him from Wallens Ridge State Prison ("WRSP") to a lower security level prison to match his low security scores under Virginia Department of Corrections (VDOC) procedures. As relief in this action, he seeks preliminary injunctive relief, directing that he be transferred to a lower security level prison facility and monetary damages for each day he remains at WRSP. Upon consideration of the complaint, the court finds that this action should be dismissed pursuant to 28 U.S.C. §1915A(b)(1) for failure to state a claim upon which relief may be granted.[1]

I

Williams alleges the following sequence of facts from which his claims arise. He was first confined in the VDOC in June 2003 and was assigned to WRSP. At his first annual review, he scored points qualifying him for security level 3, but his counselor and the Central Classification

---

[1] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under §1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

1

Service ("CCS") overrode his score and assigned him to security level 5. He scored enough points to earn security level 3 again at his second annual review, but CCS overrode that score and assigned him to level 4. Officials then approved him for transfer to Keen Mountain Correctional Center, a lower security level prison, but he was never transferred. In June 2006, at his third annual review, Williams's point score qualified him for level 2, but his counselor recommended level 3. Officials placed him on the list for transfer to Powhatan State Prison, but he was not transferred. In June 2007, when he filed this lawsuit, Williams expected to score points qualifying him for security level 2 again. Yet, he remains housed at WRSP, a security level 5 prison. Williams states that he has 57 years left to serve on his criminal sentence. He has "endured the restrictive function" of WRSP, which "differs [markedly] from lower security prisons in just about every conceivable manner."

II

To state a cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). When a defendant is lawfully convicted and confined to jail, he loses a significant interest in his liberty for the period of the sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). For example, inmates have no constitutional right to be housed in any particular prison or in a prison with less restrictive conditions. Meachum v. Fano, 427 U.S. 215, 224 (1976).

> The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons.

Id. at 224-25. Moreover, inmates' confinement is necessarily subject to the broad discretion of those

parties managing the jail. Gaston, 946 F.2d at 343.

Nevertheless, confinement does not strip inmates of all liberty interests, and state prison regulations may create liberty interests. Id. Such liberty "interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Courts have found that Virginia's classification scheme governing prisoners' custody, security, and good conduct earning levels does not create a liberty interest in avoiding changes in these classifications, since an inmate's status in each of these areas is subject to change, based on his own behavior and the discretion of prison officials. Oliver v. Powell, 250 F. Supp.2d 593, 605 (E.D. Va. 2002); Garrett v. Angelone, 940 F. Supp.2d 933, 943 (W.D. Va.1996). A state's failure to abide by its own procedural regulations before imposing disciplinary segregation or another less than favorable housing assignment is not a federal due process issue, Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir.1990), and is, therefore, not actionable under § 1983.

Under these principles, Williams's allegations fail to state any due process claim actionable under § 1983. First, he has no independent constitutional right to be housed in any particular prison within the VDOC system. Second, Virginia's security classification system does not create any federally protected liberty interest in being housed in a particular prison. As such, the defendants are not violating any constitutionally protected right by continuing to house him at WRSP in a more restrictive environment, despite his admirable security scores. They are merely exercising their discretion concerning the appropriate housing assignment for him and for the other thousands of

3

VDOC inmates.

Third, even assuming that VDOC procedural regulations normally require an inmate to be housed at an institution matching his security level, violations of state regulations do not give rise to any federal constitutional claim. Thus, even if Williams could prove that the delay of his approved transfer to a lower level security institution violates VDOC procedures, he still would not have a federal constitutional claim actionable under § 1983. Finally, to the extent that Williams may have some claim against the defendants under state law or the VDOC regulations themselves, such state law claims are not independently cognizable under § 1983.[2] The court will summarily dismiss all of Williams's due process claims, pursuant to § 1915A(b)(1), for failure to state any actionable claim for relief.

III

Williams also alleges that the delay of his transfer is unfair because other inmates with lengthier sentences and higher security level scores have been transferred away from WRSP, while he has been waiting for his own transfer to occur. The court finds no constitutional problem here.

The Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "does not take from the States all power of classification, but keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (citation and internal quotation marks omitted). Thus, to prove an equal protection claim,

---

[2] To the extent that Williams might have some actionable claim against the defendants under state law or the VDOC procedures themselves, the court declines to exercise supplemental jurisdiction over such claims, pursuant to 28 U.S.C. § 1367(c), and will dismiss them without prejudice.

4

a litigant "'must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.'" Veney, 293 F.3d at 730 (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)). Prisoner litigants must generally demonstrate that any unequal treatment is not rationally related to a legitimate governmental purpose. Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989) (finding no equal protection violation where inmates sentenced in D.C. courts and housed in federal prisons could not earn good time at as favorable a rate as inmates sentenced in D.C. courts and housed in D.C. prisons). See also Strickler v. Waters, 989 F.2d 1375 (4th Cir. 1993)(finding no equal protection violation where inmate with sentence to serve in state prison facility spent long period in local jail with less favorable conditions, specifically, overcrowding, inadequate exercise facilities, poor climatological conditions, and an inadequate library with restricted access). Even where similarly situated persons are treated differently, a state classification "that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for [it]." FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993).

Williams has not proven either aspect of his equal protection claim. First, he does not, and likely cannot, demonstrate that the prisoners transferred away from WRSP were similarly situated to him in all respects relevant to a discretionary transfer decision. Many factors besides security level score play into housing assignment decisions, such as bed space at other institutions, inmates' rehabilitation or medical needs, their family's locations, upcoming court proceedings, percentage of time served on the criminal sentence, time left to serve before release, and a host of other variables impossible for Williams to match completely. Second, these same factors provide a rational basis

5

for prison officials to treat inmates differently in the transfer arena, even when they have precisely the same security level score. The court must dismiss Williams's equal protection claims, pursuant to § 1915A, for failure to state any actionable claim.[3] An appropriate order shall be issued this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 11th day of July, 2007.

*James C. Turk*
Senior United States District Judge

---

[3] Inasmuch as the court finds that Williams allegations, even taken in the light most favorable to him, do not give rise to any claims cognizable under § 1983, the court cannot find that justice requires appointment of counsel on his behalf or that he entitled to the preliminary injunctive relief that he seeks. Therefore, these motions must be denied.

6